UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE MARIE CAPUTO,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO POLICE DEPARTMENT, THE CITY OF SAN DIEGO POLICE COMMISSIONER, et. al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 16-cv-00943-AJB-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT SHERIFF GORE'S MOTION TO QUASH; AND**<br><br>**(2) GRANTING DEFENDANT COUNTY OF SAN DIEGO AND DEFENDANTS CITY OF SAN DIEGO, SHELLEY ZIMMERMAN, SERGEANT ANDREW FELLOWS, AND FRANK BIGLER'S MOTIONS TO DISMISS**<br><br>(Doc. Nos. 94, 95, 101) |

Pending before the Court is Defendant Sheriff Gore's motion to quash service of summons, (Doc. No. 95), Defendant County of San Diego's motion to dismiss, (Doc. No. 94), and Defendants City of San Diego, Chief Shelley Zimmerman, Sergeant Andrew Fellows, and Officer Frank Bigler's motion to dismiss, (Doc. No. 101). Plaintiff Rose

Marie Caputo opposes all three motions. (Doc. Nos. 108, 109, 110, 111.)[1] Pursuant to Civil Local Rule 7.1.d.1, the Court finds the motions suitable for determination on the papers and without oral argument. For the reasons set forth more fully below, the Court **GRANTS** Defendant Gore's motion to quash and **GRANTS** both motions to dismiss.

## I.   BACKGROUND

The following facts are taken from Plaintiff's operative complaint and are construed as true for the limited purpose of resolving the instant motions to dismiss. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

The instant matter revolves around Plaintiff's civil action for damages pursuant to 42 U.S.C. § 1983. (Doc. No. 91 at 2.)[2] Plaintiff alleges that on March 14, 2015, at approximately 9:00 p.m., she was stopped by Defendant Fellows. (*Id.* at 3.) When Fellows exited his vehicle, he began to yell at Plaintiff from approximately ten to twelve feet away. (*Id.*) Defendant Fellows then approached Plaintiff's vehicle and demanded that she put her hands out the window and then asked Plaintiff if she was in possession of any sharp objects. (*Id.*) Plaintiff states that she responded to Fellows in a calm manner and informed him that she had no weapons on her person. (*Id.*) Fellows then proceeded to open Plaintiff's glove box without explaining why she had been stopped. (*Id.*) Plaintiff asserts that she was being pursued as she had just left her husband's home where they had engaged in a "heated argument." (*Id.* at 4.)

During the remainder of the stop, Plaintiff alleges that Fellows yelled at her, gave her various commands, and then despite Plaintiff's calm demeanor, grabbed her left arm and pulled her out of her car with such force that she did a somersault in the air and landed on the street on her shoulder. (*Id.* at 6.) Plaintiff's body was then pushed into the asphalt as Fellows cuffed her hands behind her back. (*Id.*) Plaintiff contends that her hands were

---

[1] The Court notes that ECF Document number 109 is an exact replica of document number 111. (Doc. Nos. 109, 111.)

[2] Page numbers refer to the CM/ECF page number and not the page number listed on the original document.

so tightly cuffed that she was placed in a state of shock where she began to shake and cry, and then lost control of her bladder. (*Id.*)

After Plaintiff was "thrown" into the back of a police car, Defendant Frank Bigler arrived on the scene and informed Plaintiff that she was being arrested for Domestic Battery. (*Id.* at 6–7.) In total, Plaintiff alleges that she spent around twenty-five minutes in the back of the vehicle suffering from increasing pain from back and neck spams. (*Id.* at 7.) Due to the pain she was experiencing, Plaintiff informed the officers that she was federally disabled and then asked that her cuffs be loosened as she was not being combative. (*Id.*) However, her request was denied. (*Id.*) Plaintiff was then taken to a holding cell, where she was provided a mediocre medical evaluation. (*Id.*)

While in the holding cell, Plaintiff states that her rights were not read to her, she was accused of having been arrested for a DUI, and she suffered from tremendous fear and trepidation. (*Id.* at 8.) Furthermore, Plaintiff was denied her right to a phone call and officers ignored her requests to use the restroom. (*Id.* at 9.) Explicitly, Plaintiff claims that she waited for over an hour in a significant amount of pain to use the restroom, however due to a bladder condition, as her requests were being disregarded, Plaintiff had no other choice but to urinate all over the holding cell floor. (*Id.* at 9–10.)

Plaintiff was then transferred to the Scripps Mercy Emergency Room. (*Id.* at 10–11.) While at the emergency room, due to the unnatural angle of her hands in the handcuffs, Plaintiff continued to suffer incessant spasms. (*Id.* at 11.) Despite this, Defendant Bigler refused to change the position of her handcuffs. (*Id.*) Moreover, Plaintiff alleges that she received below standard medical treatment from the hospital staff, that Defendants interfered with her course of treatment and made false allegations to her doctor, that she was discharged precipitously, and that not a single medical staff personnel attempted to help her when she yelled out in pain. (*Id.* at 11, 13–14.) After Plaintiff was discharged, she claims she was hog tied outside of the hospital and then driven to Rosecrans County Psychiatric Hospital. (*Id.* at 15.)

While at the psychiatric hospital, Plaintiff was screened for suicide and homicidal

ideation. (*Id.*) Plaintiff was then referred back to the Vista Detention Center. (*Id.*) Upon arriving at the detention center, Plaintiff did not receive an examination, was strip searched, and then placed into a cell where she was forced to wear a safety smock that did not cover her genitalia. (*Id.* at 15–16.) Additionally, Plaintiff describes the cell as frigidly cold, and having blaring bright lights and a putrid stench. (*Id.* at 16.) Plaintiff spent the next thirty-six hours in this safety cell, despite the fact that she was still suffering from back and neck pain, anxiety, chest pain, headaches, and spasms. (*Id.*)

In sum, Plaintiff brings this lawsuit alleging that her Fourth, Eighth, and Fourteenth amendments were violated, she was denied her substantive due process rights, that the officers were following an "unlawful official policy, practice or custom," Defendants were deliberately indifferent to her health and safety, "malicious intent," cruel and unusual punishment, unequal access to the appropriate level of accommodation based on gender, a cause of action under the Americans with Disabilities Act ("ADA"), and negligence. (*See generally* Doc. No. 91.)

## II.	PROCEDURAL BACKGROUND

The procedural posture of this case is incredibly intricate. The Court notes that Plaintiff filed four complaints pre-service—the initial complaint was filed on April 19, 2016. (Doc. Nos. 1, 4, 6, 15, 17.) Thereafter, on October 19, 2016, Plaintiff paid the filing fee after two unsuccessful attempts to proceed in forma pauperis. (Doc. Nos. 2, 7, 9, 13, 19.)

Beginning in July of 2016, Plaintiff endeavored to file ex parte letters, motions, and additional amended complaints that were procedurally defective. (*See* Doc. Nos. 21–23, 25.) The Court then permitted Plaintiff leave to file her third amended complaint on June 21, 2017, in an effort to serve an operative pleading on Defendants within the confines of Federal Rule of Civil Procedure 4. (Doc. No. 26.) On July 13, 2017, Plaintiff executed and returned the summons for all of the Defendants. (Doc. Nos. 28–34.)

Subsequently, the Court was then again faced with several procedurally defective filings that were all noticed as "Document Discrepancies." (*See* Doc. Nos. 45, 46, 48.)

Among the documents was Plaintiff's motion for leave to amend her third amended complaint filed on September 8, 2017. (Doc. No. 49.) Based upon this filing, the Court vacated the hearing dates on Defendants' motions to dismiss and motion to quash. (Doc. Nos. 35, 36, 39, 52.)

The Court was then again presented with another group of "Document Discrepancies" filed by Plaintiff. (Doc. Nos. 53, 55, 57, 61, 62, 64, 70.) Thereafter, Plaintiff filed a motion for leave to file a fourth amended complaint, (Doc. No. 71), and on November 20, 2017, Plaintiff attempted to file another motion to amend, which was rejected by the Court, (Doc. Nos. 81, 83). On February 2, 2018, Plaintiff filed her operative complaint. (Doc. No. 91.) The instant motions, the two motions to dismiss and motion to quash subsequently followed. (Doc. Nos. 94, 95, 101.) The Court notes that on April 12, 2018, the Court issued an order prohibiting Plaintiff from calling chambers unless she was requesting a motion hearing date. (Doc. No. 107 at 2–3.)

## III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.,* 88 F.3d 780, 783 (9th Cir. 1996) (citations and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

## IV. DISCUSSION

### A. Defendant Gore's Motion to Quash

Gore contends that service should be quashed because (1) the complaint served upon him varied in content and form to the complaint filed with the Court; (2) at the time there was no basis to include him as he was not a named defendant; and (3) the service was defective as it was not personally served upon him. (*See generally* Doc. No. 95-1.) In opposition, Plaintiff asserts that Gore is a culpable party to this action as a representative of the deputies and staff at Vista Detention Facility. (Doc. No. 108 at 2.)

A Federal Rule of Civil Procedure 12(b)(5) motion is the proper vehicle for challenging "insufficient service of process[.]" Fed. R. Civ. P. 12(b)(5). This serves to challenge the validity of the actual method or manner of service of process. "Objections to the validity of service of process must be specific and must point out in what manner the plaintiff has failed to satisfy the requirements for proper service." *Bovier v. Bridgepoint Education/Ashford University*, No. 3:17-cv-01052-GPC-JMA, 2017 WL 4922978, at *1 (S.D. Cal. Oct. 30, 2017).

Once service of process is properly challenged, "the party on whose behalf [service] is made must bear the burden of establishing its validity." *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). A district court has broad discretion to either dismiss an entire action for failure to effect service or to quash the defective service and

permit re-service. *See Jones v. Automobile Club of S. Cal.*, 26 F. App'x 740, 742 & n.7 (9th Cir. 2002).

Here, the proof of service illustrates that Gore's summons was served on Janet A. Sumabat on July 10, 2017. (Doc. No. 33 at 4.) Rule 4 requires that service be completed by (1) "delivering a copy of the summons and of the complaint to the individual personally;" (2) "leaving a copy of each at the individual's dwelling[;]" or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). In addition, service may be satisfied by "following state law . . . in the state where the district court is located or where service is made[.]" *Id.* at (e)(1). California state law states that "[i]f a copy of the summons and complaint cannot <u>with reasonable diligence be personally delivered to the person to be served</u>, a summons may be served by leaving a copy of the summons and complaint at the person's . . . usual place of business[.]" Cal. Code of Civ. Proc. § 415.20(b).

Plaintiff's opposition brief does not attempt to argue that Janet Sumabat is an agent authorized to receive service of process on behalf of Gore nor has Plaintiff addressed any of the deficiencies pointed out by Gore in his motion. (Doc. No. 108.) Most notably, Plaintiff has not demonstrated that she attempted to personally serve Defendant Gore with "reasonable diligence" before resorting to substituted service. Accordingly, Plaintiff has not satisfied her burden and thus Defendant Gore's motion to quash is **GRANTED**. *See GayDays, Inc. v. Master Entm't, Inc.*, No. CV 07-6179 ABC (JWJx), 2008 WL 11336945, at *2 (C.D. Cal. Mar. 6, 2008).

The Court notes that Gore requests that the service be quashed and that the action be dismissed as to him. (Doc. No. 95-1 at 4.) However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). Taking this into consideration, as well as Plaintiff's pro se status, the Court finds that Plaintiff should be granted the opportunity to properly serve Defendant Gore.

///

B.     Defendants' Motions to Dismiss

The Court addresses both the County of San Diego ("the County") and Defendants City of San Diego, Shelley Zimmerman, Andrew Fellows, and Frank Bigler's (collectively referred to as "City Defendants") motions to dismiss together as they make comparatively the same arguments. (Doc. Nos. 94, 101.) Specifically, both the County and City Defendants assert that dismissal is proper based upon Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 94-1 at 7–9; Doc. No. 101-1 at 8–10 (*see Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) ("Rule 12(b)(6) is read in conjunction with Rule 8(a).")).) The Court agrees with both the County and City Defendants.

Rule 8 states that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, Plaintiff's sixty-eight page complaint is verbose, convoluted, and produces causes of action that are legally groundless. (*See generally* Doc. No. 91.) Furthermore, though the Court is able to decipher the main foundation of Plaintiff's claims, the operative complaint muddies the waters by utilizing irrelevant case law and includes a slew of immaterial factual allegations while also grouping Defendants together in an ambiguous manner. This type of pleading warrants dismissal based upon Rule 8. *See McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996) ("The complaint still reads like a magazine story instead of a traditional complaint . . . Instead, each claim says 'defendants' conduct violated various rights of plaintiffs, without saying which defendants."); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) ("Rule 8(a) has been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.") (citation and internal quotation marks omitted); *Sparling v. Hoffman Construction Co., Inc.*, 864 F.2d 635, 640 (9th Cir. 1988) (noting that a complaint that contains factual elements of a cause of action scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a)).

In addition, the Court finds dismissal proper under Rule 12(b)(6). For Plaintiff's benefit, the Court briefly analyzes the various deficiencies present in the claims.

### 1. Plaintiff's First, Second, Fifth, and Sixth causes of action are improper statements of the law and insufficiently pled.

Plaintiff's first cause of action for "Excessive Force" is described as "variously grounded" in the Fourth, Eighth, and Fourteenth Amendments. (Doc. No. 91 at 17.) This type of pleading is insufficient as the Supreme Court has clearly stated that assessing claims under 42 U.S.C § 1983 begins with identifying the precise constitutional right allegedly infringed upon. *See Graham v. Connor*, 490 U.S. 386, 394 (1989).

Moreover, the Fourth, Eighth, and Fourteenth Amendments all require varying standards and elements when applied to excessive force claims. For example, a court considers the following factors in determining whether force was excessive in eighth amendment claims against prison officials: "(1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response." *Lyons v. Busi*, 566 F. Supp. 2d 1172, 1186–87 (E.D. Cal. 2008). In comparison, in the context of investigatory stops and arrests, excessive force claims are properly characterized as invoking the protection of the Fourth Amendment. *Graham*, 490 U.S. at 394. Specifically, Fourth Amendment excessive force claims are analyzed under a reasonableness standard that balances the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (citation and internal quotation marks omitted).

Here, Plaintiff's first cause of action does not address the relevant legal standard, cites irrelevant authority, and intermingles conclusory legal allegations under different theories. For example, Plaintiff cites to the standard for deadly force, cruel and unusual punishment, negligent affliction of emotional distress, and unnecessary and wanton infliction of pain. (Doc. No. 91 at 21.) The remainder of the allegations under this cause of

9

action then hop between her stop, her arrest, the injuries she purportedly sustained during her arrest, and her experience at the emergency room. (Doc. No. 91 at 17–27.)

Based off of the foregoing, dismissal of Plaintiff's first cause of action is appropriate as it does not identify the specific constitutional right that was purportedly infringed, and makes confusing yet conclusory allegations that obfuscate the legal theory being asserted.

Plaintiff's second cause of action is asserted under substantive due process, (*Id.* at 27), and Plaintiff's fifth cause of action is asserted under the Eighth Amendment's protection against cruel and unusual punishment, (*Id.* at 46). However, similar to the above, the context and factual allegations supporting both causes of action are improperly pled. As to substantive due process, "[g]overnment officials are, of course, justified in using force—even deadly force—in carrying out legitimate governmental functions. But, when the force is excessive, or used without justification or for malicious reasons, there is a violation of substantive due process." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1408 (9th Cir. 1989), *overruling on other grounds by Armendariz v. Peanman*, 75 F.3d 1311 (9th Cir. 1996). Presently, Plaintiff alleges that "with all due respect, the use of 'Excessive Force' negated upfront for me, the opportunity to move through the phases of Due Process as they related to my case, as I was deprived of my 'liberty,' and of the opportunity to interface with the law procedurally in a 'normal course[.]'" (Doc. No. 91 at 28.) Plaintiff then resorts to re-stating the events that supposedly occurred at the Vista Detention Center. (*Id.* at 29.) These statements as well as the remainder of the allegations under this cause of action are incomprehensible and thus warrant dismissal.

Plaintiff's assertions to support her cruel and unusual punishment claim are similarly incoherent. Plaintiff points to Defendant Bigler's interference with her medical care, (*Id.* at 46), then goes on to depict the safety cell she was housed in, and references "Standards of Care," claims based on her gender, and "reasonable accommodation" requests, (*Id.* at 47). Additionally, the majority of the allegations group Defendants together and refer to them as simply "Vista county jail officials." (*Id.*) This type of group pleading is

10

16-cv-00943-AJB-BLM

impermissible. *See GenProbe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 960–62 (S.D. Cal. 1996).

Consequently, dismissal of Plaintiff's substantive due process and eighth amendment claims is proper as they lack a cognizable legal theory and are insufficiently pled. *SmileCare Dental Grp.*, 88 F.3d at 783.

As to Plaintiff's sixth cause of action for "unequal access to appropriate level of accommodation," it is uncertain what legal theory or constitutional right Plaintiff is putting forward. Plaintiff argues that she was denied the right to be free of prolonged detainment because of a low risk classification, and then goes on to state that this constitutes discrimination based on gender. (Doc. No. 91 at 50.) However, the essence of an equal protection claim is that a plaintiff has been denied protection of the laws that are otherwise available to similarly situated persons. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Moreover, the level of scrutiny under which an equal protection claim is analyzed varies depending on what protected characteristics are implicated. *See Mississippi University for Women v. Hogan*, 458 U.S. 718, 721–22 (1982) (classifications based on gender fail unless they are substantially related to a sufficiently important governmental interest).

Presently, Plaintiff has not alleged any facts about how similarly situated persons are treated in relation to the law challenged. Moreover, the complaint includes convoluted allegations such as referring to "Equal Justice Under Law," the "harrows of hell," Monell claims, low risk classifications adopted per protocol, and Title 15 C.R.R. (Doc. No. 91 at 48–51.) Thus, as Plaintiff has intermingled numerous unrelated and insufficiently articulated legal theories, dismissal of this cause of action is justified.

These abovementioned shortfalls leave this Court and the Defendants in this case without sufficient allegations to proceed. Consequently, Plaintiff's first, second, fifth, and sixth causes of action are **DISMISSED**. *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."); *see also McHenry*, 84 F.3d at 1177–80 (upholding a Rule

8 dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant."); *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (concluding that a Rule 8 dismissal was warranted based on a "rambling complaint [that] lacks facts of defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend.").

### 2. Plaintiff's Third, Third (sic), and Fourth causes of action fail to sufficiently state claims upon which relief may be granted.

Plaintiff's third cause of action is under a theory of "Unlawful Official Policy, Practice or Custom." (Doc. No. 91 at 30.) A plaintiff seeking to hold municipal entities liable under 42 U.S.C § 1983 must show their injury was caused by an official policy or custom—not merely because the municipality employed a tortfeasor. *See Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 35–36 (2010). Presently, Plaintiff only makes conclusory statements about a "policy" and "ineffective training." (*Id.* at 30–33.) Plaintiff then alleges that only "an examination of policies or a lack thereof, as well as training records and monitoring tools will adequately reveal the Supervisory Culpability of Sherriff William Gore . . . to adopt appropriate policies and strategies to ensure the likelihood that such violations of rights would not occur . . . ."). (*Id.* at 32–33.)

The Court notes that in the past, the Ninth Circuit has not required parties "to provide much detail at the pleading stage regarding such a policy or custom. In this circuit, a claim of municipal liability under § 1983 is sufficient . . . based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (citation and internal quotation marks omitted). However, even with this limited pleading standard, Plaintiff's allegations are too prolix and long-winded to present a legally cognizable claim. For instance, as currently pled, the Court is left in the dark as to the nature of the alleged policy, custom or practice i.e., the Court is unsure if the policy is related to use of excessive force on individuals during a traffic stop, use of force on disabled individuals, treatment of disabled individuals in holding cells, or seeking medical assistance for individuals.

Moreover, to the extent that Plaintiff is attempting to allege a failure to train, the broad conclusion mentioned above does not sufficiently state a plausible *Monell* claim. Specifically, the complaint does not explain how the training with respect to arresting and treating individuals with disabilities was deficient or inadequate. *See McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 803 (E.D. Cal. 2016).

Similarly, Plaintiff's cause of action for "deliberate indifference" lacks a cognizable legal theory. Plaintiff points to *Gutierrez v. Peters*, 111 F.3d 1364 (7th Cir. 1997), and *Farmer v. Brennan*, 511 U.S. 825 (1994), for the proposition that actions of employees in detention facilities may give rise to liability under a theory of deliberate indifference if they intentionally refuse to respond to an inmate's complaints, or delay medical care for a known injury. (Doc. No. 91 at 33–34.) However, those cases addressed the potential viability of deliberate indifference claims under the Eighth Amendment's protection against cruel and unusual punishment. *See Gutierrez*, 111 F.3d at 1365; *see also Farmer*, 511 U.S. at 828. Here, Plaintiff has not pled any facts to indicate there is any basis to proceed under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) (explaining the Eighth Amendment's protections were designed to protect those who are convicted of crimes, and applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Indeed the complaint clearly states that Plaintiff was "released without any charges[.]" (Doc. No. 91 at 17.)

However, if Plaintiff is attempting to assert a claim of liability for nonfeasance of a municipality or government actor, the complaint has failed to clearly state such a claim. "A plaintiff who sets forth a <u>Monell</u> claim against an entity defendant must show that the entity acted with deliberate indifference to the constitutional rights of the plaintiff in adhering to a policy or custom or by acts of omission." *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1112 (E.D. Cal. 2017). Thus, the objective deliberate indifference standard is met when a "plaintiff [] establish[es] that the facts available to [entity] policymakers put them on actual or *constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens[.]" *Castro v. Cty. of Los Angeles*,

13

833 F.3d 1060, 1076 (9th Cir. 2016). As discussed above, Plaintiff has not adequately alleged a policy, custom or omission. Thus, this cause of action fails. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by* 833 F.3d 1060 (9th Cir. 2016) (explaining that municipal liability cannot be premised on respondeat superior and it is not sufficient for a plaintiff to merely point to something that the city could have done to prevent the incident).

Plaintiff's fourth cause of action is entitled "MALICIOUS INTENT," and defines malicious intent as "the intent, without just cause or reason, to commit a wrongful act that will result in harm to another. It is the intent to harm or do some evil purpose." (Doc. No. 91 at 42.) So far as this Court is able to determine, Plaintiff is citing a dictionary definition of the term "malice" to frame a legal theory on which relief might be granted. *See* MALICE, Black's Law Dictionary (10th ed. 2014) (defining malice as "1. The intent, without justification or excuse, to commit a wrongful act."). Although malice arises in many areas of the law, this Court is unable to find and Plaintiff has failed to clearly state any legal cause of action on which one may recover for the mere presence of a malicious mental state. *See* Cal. Penal Code § 187 (defining murder as "the unlawful killing of a human being . . . with malice aforethought."). Thus, this claim is groundless.

In sum, Plaintiff's deliberate indifference and official policy or custom causes of action are **DISMISSED**. As to Plaintiff's "Malicious Intent" claim, as there is no legal theory to support such a claim, this action is **DISMISSED WITH PREJUDICE**.

**3. Plaintiff's Seventh cause of action under Title II of the Americans With Disabilities Act and the Rehabilitation Act fail to address the relevant legal standard.**

A claim under Title II requires that a plaintiff prove (1) they are a qualified individual with a disability, (2) they were "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity," and (3) their exclusion, denial, or discrimination was by reason of their disability. *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

14

A qualifying individual with a disability is a person that suffers from impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C.A. §§ 12102 (1)(A)–(C). The complaint does not sufficiently address Plaintiff's status as a qualifying individual with a disability.

Plaintiff merely states that she told arresting officers that she "was Federally Disabled due to neck and back conditions[.]" (Doc. No. 91 at 7, 9.) Plaintiff also concludes that she "should have been admitted to the Hospital for the management of . . . chronic health issues, chronic pain and other systemic disorders for which [Plaintiff is] deemed Federally Disabled." (*Id.* at 13.) Additionally, Plaintiff's complaint attaches a social security administration document that purportedly demonstrates that she is disabled. (Doc. No. 91-2.) Ultimately, these assertions are insufficient as they do not contain any clear allegations about Plaintiff's alleged impairment, major life activities that are substantially limited, records of disability, or being regarded as having such an impairment. *See* 42 U.S.C.A. §§ 12102 (1)–(3); *see also Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-MEJ, 2016 WL 4538367, at *2 (N.D. Cal. Aug. 31, 2016) (holding disability claim was not sufficiently pled where plaintiff merely stated she used a scooter and was a "qualified individual with a disability"); *Khalid v. Bank of Am., N.A.*, Civ. No. 15-00182 DKW-KSC, 2015 WL 5768944, at *3 (D. Haw. Sept. 30, 2015) (determining that the plaintiff's allegations that "they had 'medical problems,'" and "medical complications relating to a" heart blockage was insufficient to demonstrate that they were disabled under the ADA).

As an apparent alternative to the protections of the ADA, Plaintiff states that "Per the Rehabilitation Act 504 Reasonable Accommodations are required to be made by employers for Disabled employees." (Doc. No. 91 at 52.) Plaintiff requests that this Court "consider any ruling that would hold Prisons equally responsible to their Disabled Detainees . . . as Employers are held to their Disabled Employees." (*Id.*) This argument is meritless. The Court is unpersuaded that the Rehabilitation Act as stated could apply to the

15

situation as pled here. Thus, the Court declines Plaintiff's request to consider the Rehabilitation Act in analyzing the adequacy of her claims under Rule 12(b)(6).

As Plaintiff has failed to sufficiently plead a cause of action under the ADA and Plaintiff's request to consider asserted portions of the Rehabilitation Act as an alternative ground for relief are unavailing, the seventh cause of action is **DISMISSED**.

### 4. Plaintiff's Eighth cause of action for negligence is insufficiently pled.

The elements of a negligence cause of action are the existence of a legal duty of care owed to the plaintiff by the defendant, a breach of that duty by the defendant, and the breach must be the proximate cause of a resulting injury to the plaintiff. *See Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013). The basis for Plaintiff's eighth cause of action for negligence is as follows:

> [U]nder the law of TORTS, a plaintiff must prove that the defendant had a duty to the plaintiff, but the defendant breached that duty by failing to conform to the required standard of conduct. The defendant's negligent conduct was the cause of harm to the plaintiff, and the plaintiff was, in fact, harmed or damaged.

(Doc. No. 91 at 54.) Plaintiff goes on to allege that the "Officers had a duty [to] the plaintiff to uphold her Constitutional and Statutory rights," and that "both Sgt. Fellows and Officer Biggler were negligent through their employment of 'Unwarranted and Excessive Force[,]' [and] Officers were negligent in not using their education and training in Management of the Disabled Plaintiff." (*Id.*) Additionally, Plaintiff alleges that the San Diego Police Department has failed to provide sufficient oversight to prevent police brutality. (*Id.* at 54–55.)

While the Court notes that Plaintiff has stated the elements of a cause of action for negligence generally, Plaintiff has failed to clearly allege a cause of action against any of the Defendants. Instead, Plaintiff merely describes the legal theory of negligence and then broadly states that the specific and general actions of various Defendants were negligent or are indicative of negligence. As this Court must ignore conclusory statements for the purposes of assessing a motion to dismiss, *Ashcroft*, 556 U.S. at 678–79, and a mere

recitation of the elements of a cause of action will not do, *Twombly*, 550 U.S. at 555, Plaintiff's eighth cause of action is insufficiently pled and is **DISMISSED**.

## V. CONCLUSION

As explained in great detail above, the Court **GRANTS** Gore's motion to quash. (Doc. No. 95.) Additionally, even construing Plaintiff's complaint liberally, as Plaintiff's complaint only provides overbroad conclusions without any conciseness or clarity as to the claims being brought, both the County and City Defendants' motions to dismiss are **GRANTED** for failure to comply with Federal Rules of Civil Procedure 8 and 12(b)(6). Plaintiff's "malicious intent" cause of action is **DISMISSED WITH PREJUDICE**.

As this is the first round of motions to dismiss to have been fully briefed and analyzed by the Court with a resulting order issued, the Court will allow Plaintiff leave to amend. Plaintiff must file her amended complaint within **twenty-one (21) days** from the date of this Order curing the deficiencies noted herein. Additionally, Plaintiff must properly serve Defendant Gore with this amended complaint.

**IT IS SO ORDERED**.

Dated: August 27, 2018

Hon. Anthony J. Battaglia
United States District Judge